553 A.2d 233

**Jentry Lee HOOK II**

v.

**STATE of Maryland.**

**No. 68, Sept. Term, 1988.**

Court of Appeals of Maryland.

Feb. 13, 1989.

Motion for Reconsideration Denied April 11, 1989.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

### (A)

Homicide is the killing of a human being by a human being. It is culpable when it is felonious. It is felonious when it is not legally justifiable or excusable.[1] Felonious

---

1. *State v. Ward,* 284 Md. 189, 194, 396 A.2d 1041 (1978). For example, homicide is excusable when it is committed in self defense. *State v. Faulkner,* 301 Md. 482, 485, 483 A.2d 759 (1984). "Self defense operates as a complete defense to either murder or manslaughter." *Id.* Homicide is justifiable, for example, when it is commanded or

homicide is either murder or manslaughter.[2] Murder is in the first degree or in the second degree. In Maryland, all murder perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing[3] or committed in the perpetration of, or attempt to perpetrate certain felonies (of which robbery is one) is murder in the first degree.[4] All other kinds of murder are murder in the second degree.[5]

## (B)

The general rule is that voluntary drunkenness is not a defense to crime. *Breeding v. State,* 220 Md. 193, 199, 151 A.2d 743 (1959); *Saldiveri v. State,* 217 Md. 412,

---

authorized by the law, "as when a public servant puts a person to death pursuant to a sentence of a court." Torcia, *Wharton's Criminal Law,* § 119 at 102 (1979).

**2.** "In Maryland, murder and manslaughter are not considered as degrees of felonious homicide, but are regarded as distinct offenses, distinguished by the presence of malice aforethought in murder and the absence of malice aforethought in manslaughter." *State v. Ward,* 284 Md. at 195, 396 A.2d 1041; *State v. Faulkner,* 301 Md. at 485, 483 A.2d 759.

Malice is "the intentional doing of a wrongful act to another without legal excuse or justification. It includes any wrongful act done wilfully or purposely." *Chisley v. State,* 202 Md. 87, 105, 95 A.2d 577 (1953). In other words, malice is an act "intended to bring harm to another person." *Brown v. State,* 285 Md. 469, 474, 403 A.2d 788 (1979). But *see Glenn v. State,* 68 Md.App. 379, 398–412, 511 A.2d 1110 (1986), *cert. denied,* 307 Md. 599, 516 A.2d 569 (1986).

**3.** Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 407.

**4.** Md.Code, Art. 27, §§ 408–410.

**5.** Md.Code, Art. 27, § 411. "Where the law divides murder into grades, a [felonious] homicide is presumed to be murder in the second degree...." *Chisley v. State,* 202 Md. at 105, 95 A.2d 577. *Accord, Robinson v. State,* 249 Md. 200, 238 A.2d 875, *cert. denied,* 393 U.S. 928, 89 S.Ct. 259, 21 L.Ed.2d 265 (1968). The burden is on the State to show that the killing was within the statutory definitions of first degree murder if the homicide is to be elevated to that grade. *Chisley* [202 Md.] at 105, 95 A.2d 577. Sections 407–411 of Code Art. 27 "do not create any new statutory crimes, but rather divide the crime of murder, as known at common law, into degrees." *Campbell v. State,* 293 Md. 438, 441, 444 A.2d 1034 (1982).

424–425, 143 A.2d 70 (1958). *See Shell v. State,* 307 Md. 46, 60, 512 A.2d 358 (1986). The general rule applies to murder. But, although voluntary intoxication does not excuse murder, it may downgrade murder in the first degree to murder in the second degree.[6] Over a hundred years ago "this Court noted as a general principle that evidence of intoxication was admissible to negate the mens rea required for a first degree murder conviction." *Shell v. State,* 307 Md. at 59, 512 A.2d 358 citing to *Spencer v. State,* 69 Md. 28, 41–42 (majority), 46–50 (dissent), 13 A. 809 (1888).

In *Chisley v. State,* 202 Md. 87, 107, 95 A.2d 577 (1953), we quoted with approval *Warren on Homicide,* Vol. 1, § 61 at 204 (1914):

"Where murder is divided into degrees, the fact of drunkenness at the time of the homicide may be considered by the jury in determining the degree of murder."

We noted that *Warren* added:

"It is held that the mere fact the accused was intoxicated is not sufficient to reduce the killing from murder to manslaughter."

*Id.* at 209. We reviewed *Chisley* in *Shell,* 307 Md. at 59, 512 A.2d 358. We observed: "On appeal [Chisley] challenged the sufficiency of the evidence underlying the first degree murder conviction relying in part upon his alleged intoxicated state at the time of the killing." The Court in *Chisley,* in finding that there was sufficient evidence to submit the charge to the jury, held that the jury was properly instructed "as to the necessity for considering the effect of intoxication on the formation and existence of wilfulness, deliberation and premeditation." *Shell,* at 59, 512 A.2d 358, quoting *Chisley,* 202 Md. at 108, 95 A.2d 577. *Breeding v. State,* 220 Md. 193, 151 A.2d 743, affirmed a conviction of murder in the first degree. It observed that "[v]oluntary drunkenness is generally not a defense." *Id.*

---

6. For an explanation why voluntary intoxication may negate first degree murder but not second degree murder, *see Cirincione v. State,* 75 Md.App. 166, 171 n. 1, 540 A.2d 1151 (1988) (Moylan, J.).

at 199, 151 A.2d 743. But it indicated that voluntary intoxication was relevant with respect to the degree of murder, by adding: "Moreover, the triers of fact could properly find, as they did, that the accused was not drunk at the time of the murder." *Id.*

 Maryland law is clear. Although voluntary intoxication is not a defense to murder, evidence with respect to it is relevant and material to a determination by the trier of fact of the degree of a murder alleged to be premeditated. In other words, did the accused by reason of his intoxication, lack the wilfulness, deliberation and premeditation necessary to sustain a conviction? If, because of his intoxication, the accused did not have the capacity to be motivated by any one of these factors, the murder is murder in the second degree.[7]

A comprehensive review of cases dealing with the asserted defense of voluntary intoxication was made in *Shell v. State*, 307 Md. at 58–65, 512 A.2d 358 (Eldridge, J.). It disclosed that "[v]oluntary intoxication as a defense to some criminal charges is clearly recognized in Maryland." *Id.* at 58, 512 A.2d 358. "Maryland's view deem[s] voluntary intoxication relevant to 'specific intent' crimes but not 'general intent' crimes...."[8] *Id.* at 63, 512 A.2d 358.

 Robbery is a specific intent crime.
It is clear that there can be no robbery without a larcenous intent.... Therefore, as larceny is an ingredient

---

7. For the meaning of "wilful," "deliberate," and "premeditated," *see Ferrell v. State*, 304 Md. 679, 687, 500 A.2d 1050 (1985); *Brown v. State*, 285 Md. 469, 474–475, 403 A.2d 788 (1979); *Chisley v. State*, 202 Md. at 106, 95 A.2d 577. *See also* Maryland Criminal Pattern Jury Instructions, prepared by the Maryland State Bar Association, Inc., Committee on Criminal Pattern Jury Instructions, MPJI–Cr. 4:17–4A at 239 and 4:17–5A at 246 (1987).

8. For an explanation of "[t]he distinction between the categories of crime, such as 'specific intent' crimes or 'general intent' crimes, for which voluntary intoxication is or is not relevant to guilt ..." *see Smith v. State*, 41 Md.App. 277, 305, 398 A.2d 426, *cert. denied*, 284 Md. 748 (1979) (Moylan, J.), to which we referred and quoted in *Shell v. State*, 307 Md. 46, 62–63, 512 A.2d 358 (1986).

of robbery, we look to the components of the former to ascertain the requisite mental element of the latter. Larceny is the fraudulent taking and carrying away of a thing without claim of right *with the intention of converting it to a use other than that of the owner without his consent....* Because an intent to steal, the *animus furandi*, must be present, it follows that larceny, and therefore robbery, is classed as a specific intent crime. *State v. Gover*, 267 Md. 602, 606, 298 A.2d 378 (1973) (citations omitted). One of the elements of robbery is the additional *mens rea* of a specific intent above and beyond the doing of the *actus rea*. Therefore, voluntary intoxication serves as a defense to that crime.[9]

In felony murder the underlying felony is an essential ingredient of murder in the first degree. *Newton v. State*, 280 Md. 260, 269, 373 A.2d 262 (1977). The State is required to prove the underlying felony and that death occurred in the perpetration or attempted perpetration of the felony. *Id.* This is sufficient; there is no need to prove wilfulness, deliberation, and premeditation. *Id. See State v. Frye*, 283 Md. 709, 713, 393 A.2d 1372 (1978). Thus, when the underlying felony is the specific intent crime of

---

9. The Court in *State v. Gover*, 267 Md. 602, 298 A.2d 378 (1973), emphasized that the degree of intoxication required to negate specific intent was substantial. It said:

"[T]he degree of intoxication which must be demonstrated to exonerate a defendant is great. Evidence of drunkenness which falls short of a proven incapacity in the accused to form the intent necessary to constitute the crime merely establishes that the mind was affected by drink so that he more readily gave way to some violent passion and does not rebut the presumption that a man intends the natural consequence of his act."

*Id.* at 607–608, 298 A.2d 378. On the question whether a defendant has reached that stage of intoxication that renders him incapable of forming the requisite *mens rea* which is a necessary element of all specific intent crimes," the Court remanded the case to allow the trial judge to determine

whether Gover was so drunk as to paralyze his mental faculties and render him incapable of entertaining the design to take and permanently convert the property of another to his own use.

*Id.* at 608, 298 A.2d 378.

robbery,[10] voluntary intoxication is relevant to show that the perpetrator did not have the capacity to entertain the deliberate purpose of depriving the owner permanently of the stolen goods. Lacking proof of the necessary specific intent, proof of the underlying felony fails. Without proof of the underlying felony, there can be no conviction for felony murder. Therefore, on a felony murder charge with a specific intent crime as the underlying felony, evidence of voluntary intoxication is admissible as a defense.

## II

Jentry Lee Hook, II, was indicted on the presentment by a grand jury that he shot and killed two people. He was charged with the murder of them in the form authorized by Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 616,[11] and with related offenses. A jury in the Circuit Court for Baltimore County convicted him of all of the charges submitted to it. The jury found Hook guilty of the first degree murder of each of the victims on the basis that the homicide was wilful, deliberate, and premeditated. It found him

---

**10.** Basic robbery and robbery with a deadly weapon (armed robbery) are not separate offenses. They both constitute the same common law felony of "robbery." *Whack v. State,* 288 Md. 137, 140, 416 A.2d 265 (1980), *appeal dismissed,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981). The use of a deadly weapon merely calls for a harsher punishment. Md.Code, Art. 27, §§ 486 and 488.

**11.** Md.Code, Art. 27, § 616 provides:

In any indictment for murder ..., it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to the following effect: "That A.B., on the ..... day of ..... nineteen hundred and ....., at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and murder) C.D. against the peace, government and dignity of the State".

Under this statutory formula, even though it spells out murder in the first degree, the accused may be convicted of murder in the first degree, of murder in the second degree, or of manslaughter. *Ross v. State,* 308 Md. 337, 343–346, 519 A.2d 735 (1987); *State v. Ward,* 284 Md. 189, 200–201, 396 A.2d 1041 (1978). A conviction of murder in the first degree under the formula may be on the basis of premeditated murder or felony murder. *Wood v. State,* 191 Md. 658, 667, 62 A.2d 576 (1948).

guilty of the first degree murder of each of the victims on the basis that the homicide was perpetrated in the commission of a felony. It found him guilty of the armed robbery of each of the victims. It found him guilty of the use of a handgun in the commission of a felony or a crime of violence.

At the penalty stage of the trial, after a capital sentencing hearing, the jury rejected the death penalty sought by the State. It designated Hook's intoxication as one of the mitigating facts. The trial judge imposed consecutive life sentences on the murder convictions, a 20-year sentence on the armed robbery convictions to run concurrently with each other but consecutive to the life sentences, and a 15-year sentence on the handgun conviction to run consecutive to all of the other sentences.

Hook turned to the Court of Special Appeals. The opinion and mandate of that court affirmed the judgment entered in the trial court with respect to murder. It affirmed the convictions of armed robbery. It directed that the sentences thereon be vacated and that the convictions be merged into the convictions of felony murder. It implicitly affirmed the judgment on the handgun charge although the opinion and the mandate did not expressly so state. *Hook v. State*, No. 1395, September Term, 1987, per curiam, unreported, filed 13 May 1988, slip opinion at 5, 6, and 16.

We granted Hook's petition for the issuance of a writ of certiorari but we ordered that the review "shall be limited solely to the following questions...."
1) Did the trial court err by allowing the prosecutor to withdraw second degree murder from the jury's consideration?
2) Did the Court of Special Appeals err by holding that the trial court's refusal to instruct the jury about second degree murder and its refusal to let defense counsel explain second degree murder to the jury were harmless errors?

## III

We recount the circumstances under which the questions arose. The victims were Bobby Watson Cooper and Mildred S. Whelan. Witnesses testifying to the killings were Rosemary Gauthier and her sister, Karen Stewart. It all began in the late afternoon of 11 October 1986 when Hook, Stewart, and Gauthier met Cooper outside a bar. Hook was drinking at the bar. When after a short time they left the bar, he continued to drink at Cooper's residence, the caretaker's house at Oak Lawn cemetery. During the course of the evening, Whelan, Hook's current girlfriend, arrived on the scene. Although Stewart was Hook's former girlfriend, at Hook's request, she told Whelan that she and Gauthier were Cooper's

daughters. Hook and Stewart went into the kitchen. Hook tried to persuade her to resume their former relationship but she refused to do so. Thereafter, Hook left the house. He returned a short time later with a handgun. Stewart reentered the kitchen and Hook joined her. He showed Stewart the fully loaded gun and said he was going to kill Cooper and Whelan—"blow them away." When Stewart attempted to dissuade him, he threatened her. He went into the living room and shot Whelan three times and Cooper three times. On hearing the shots, Stewart ran into the living room. She saw Hook "in [Whelan's]" pocketbook and "his hand was going into [Cooper's] pocket." According to Stewart: "He just said if I catch you and Rosemary [Gauthier] I am going to kill you's." Gauthier and Stewart fled. Scared, they did not report the killings to the police until some five hours later.

Hook was apprehended in Tallahassee, Florida. Three Baltimore County police officers were sent to fetch him back to Maryland. On the trip back Hook made a confession, the admission in evidence of which is now not challenged. The confession was reduced to writing by Detective James Tincher, assigned to the Homicide Squad, and signed by Hook. After describing the events leading to the killings, Hook said; "I grabbed another beer, pulled my pistol [which he had gotten from his car] and walked into the living room and just opened fire." He then went outside to find Gauthier and Stewart but was unsuccessful. He returned "back, upstairs and grabbed my jacket and 12 pack of beer and grabbed [Cooper's] wallet and [Whelan's] black purse that was sitting on the floor." He took Cooper's car and after looking for Gauthier and Stewart for about four hours ("I didn't know whether to destroy them as witnesses or just try to talk to them"), he left the area and drove to Florida. The essence of Hook's confession was in accord with the testimony of Gauthier and Stewart. Their testimony and Hook's confession tended to show that Hook was intoxicated at the time of the killings.

# IV

Maryland Rule 4-247(a) provides, in pertinent part:

The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. A statement of the reasons for entering a nolle prosequi shall be made a part of the record.[12]

---

12. "A nolle prosequi is simply the prosecution's abandonment of a charging document, count or part of a count.... [I]t need not be couched in any particular language or take any specific form; it is the substance of the prosecutor's action which controls." *Hooper v. State,* 293 Md. 162, 168, 443 A.2d 86 (1982) (footnote and citations omitted).

A *nolle prosequi* may be entered to a degree of an offense. *State v. Ward*, 284 Md. 189, 208, 396 A.2d 1041 (1978). It "may be entered as to an entire charging document, or one or more counts, or even part of a count." *Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008 (1981).

At the close of the State's case-in-chief, the State entered a nolle prosequi on the record in open court to murder in the second degree. *See* note 11, *supra*.[13] Defense counsel made prompt objection "to the State's nol prossing or not submitting to the jury the count of second degree murder." Counsel cited to the court the Fifth, Eighth and 14th Amendments of the U.S. Constitution and allege[d] that the nol pros under those circumstances is a violation of the Defendant's due process rights, fundamental fairness, equal protection and abuse of prosecutorial discretion.

It seemed to the court that

the State can submit whatever crimes it has previously charged the Defendant with to the Jury and nol pros whatever charge it wishes to submit to the Jury.

The court overruled the objection with the comment:

Certainly, if the Jury is not convinced that the Defendant is guilty of first degree murder but is in their minds convinced he's guilty of second degree murder, the only verdict the Jury can return under this circumstances is a not guilty verdict, by virtue of the fact that the State has specifically not submitted any charge other than first degree murder to the Jury.

This comment goes to the heart of the questions presented to us.

"The entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent." *Ward v. State*, 290 Md. at 83, 427 A.2d 1008.[14] "This 'settled rule' allowing

13. The State also nol prossed, as to each victim, the basic robbery charges, the attempted armed robbery and attempted basic robbery charges and one of the two identical charges as to the use of a handgun in the commission of a felony or a crime of violence. There remained the following charges which the prosecutor requested the court to submit to the jury: premeditated murder in the first degree, felony murder, armed robbery, all with respect to each victim, and the use of a handgun charge. The prosecutor specifically requested the trial judge to submit to the jury the charges of "murder in the first degree under the theory of premeditated murder and also under the theory of felony murder." A statement of the reasons for entering the nol prosses was not made a part of the record as required by Md.Rule 4–247(a).

14. For the sharp distinction drawn in Maryland between a nolle prosequi and a stet, *see State v. Moulden*, 292 Md. 666, 673, 441 A.2d 699 (1982). *See also* Md.Rule 4–248.

prosecutorial choice," however, is not completely without restraint. The prosecutor's power is not absolute. *United States v. Batchelder,* 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). We declared in *Ward,* 290 Md. at 83, 427 A.2d 1008, that "the prosecution cannot, by a nolle pros of part of a count, change the entire nature of the offense charged." In *Bordenkircher v. Hayes,* 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604, *rehearing denied,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978), the Court observed:

> There is no doubt that the breadth of discretion [whether or not to prosecute] that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse.

We recognized in *Ward v. State,* 290 Md. at 83 n. 6, 427 A.2d 1008, that "[t]here is authority ... suggesting that the court may or may not permit the entry of the nolle prosequi in order to prevent injustice."[15] We referred to *Simmons v. State,* 165 Md. 155, 165, 167 A. 60 (1933). *Simmons* was concerned with misjoinder of counts, a matter generally left to the discretion of the trial court. This Court said:

> [T]he courts will guard against injustice and abuse whenever apparent, and not permit such a joinder of counts as will embarrass the traverser in his defense by, in the court's sound discretion, quashing the indictment, permitting a *nolle prosequi* as to a count or counts, or compelling the prosecution to elect on which count or counts to proceed.

*Id.* The right of an accused to a fair trial, although not a perfect trial, is paramount. *Crawford v. State,* 285 Md. 431, 451, 404 A.2d 244 (1979). *See Mack v. State,* 300 Md. 583, 598, 479 A.2d 1344 (1984). The essence of *Crawford* is that fundamental fairness is essential to the very concept of justice; justice must satisfy the appearance of justice. "[O]ur system of law has always endeavored to prevent even the *probability* of unfairness." *Crawford,* 285 Md. at 452, 404 A.2d 244, quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955), and supplying emphasis. But we cautioned, quoting with approval *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941): "In order to declare a denial of [fundamental fairness, the reviewing court] must find that the absence of that fairness

---

**15.** "Moreover," we pointed out in *Ward v. State,* 290 Md. 76, at 83 n. 6, 427 A.2d 1008 (1981), "in a minority of American jurisdictions, the court very early took the position that the consent of the court was required before there was a right to enter a nolle prosequi. *See, e.g.,* 1 Virginia Cases 139 (1803)."

fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial...." *Crawford,* 285 Md. at 452, 404 A.2d 244.[16]

■ We believe that under the concept of fundamental fairness with respect to a trial in a criminal cause, the broad authority vested in a prosecutor to enter a nolle prosequi may be fettered in the proper circumstances. A case-by-case evaluation is necessary. We evaluate the circumstances, set out *supra,* surrounding the entry of the nol pros to the crime of murder in the second degree in the case at hand.[17]

We hark back to the trial judge's comment when he overruled defense counsel's objection to the nol pros of the second degree murder charge, set out *supra.* He said:

Certainly if the Jury is not convinced that the Defendant is guilty of first degree murder, but is in their minds convinced he's guilty of second degree, the only verdict the Jury can return under this circumstance is a not guilty verdict, by virtue of the fact that the State has specifically not submitted any other charge other than first degree murder to the jury.

Aye, but therein lies the rub.

■ When the court overruled the objection to the entry of a nol pros to second degree murder, defense counsel, in light of the court's ruling, requested that the court, nevertheless, instruct the jury as to second degree murder. Defense counsel also asked the court for a directory ruling with respect to discussing "second degree murder issues" in closing argument. The court refused to instruct the jury as to second degree murder and refused to permit defense counsel to argue to the jury the issue of second degree murder. The court indicated that the defense could bring to the attention of the jurors only that there was no charge of second degree murder before them. Defense counsel "can't argue to the jury crimes that aren't before the jury." The court went on:

---

16. The concept of fundamental fairness was applied in the interest of the State in *State v. Ward,* 284 Md. at 209, 396 A.2d 1041.

17. We observe that former Md.Rule 782 concerning the entry of a nolle prosequi read: "The State's Attorney *in his discretion* may terminate a prosecution on a charging document and dismiss the charging document by entering a nolle prosequi on the record in open court." *Id.,* § (a) (emphasis added). The present Rule 4-247(a), set out *supra,* deletes the phrase "in his discretion" and substitutes "charge" in lieu of "charging document."

You can say there is no charge of second degree murder before the jury. The only charge here is first degree murder and you can say that in order to prove first degree murder, what the State needs to prove and that they haven't proved it. I am not limiting your argument. All I am saying you can't argue to the jury crimes that aren't present.

True to the court's rulings, second degree murder was not brought to the attention of the jury, either by the court in its charge or by defense counsel in argument. The court's instructions explained premeditated murder and felony murder as being murder in the first degree and that they were specific intent crimes. The court discussed that voluntary intoxication is generally not a defense to a criminal charge, but noted there is an exception when the perpetrator was so drunk that "he was unable to formulate the required specific intent." The court explained: "The intoxication must have been to such a degree as to make [Hook] incapable of forming the specific intent to murder or rob." The jury charge made perfectly clear that with respect to the murder charges the jury had only two choices—guilty or not guilty. The verdict sheet handed the jury was in accord. It called for a verdict of either guilty or not guilty on both premeditated murder and felony murder. The court told the jurors:

> You will have to decide whether one or both or none of these types of first degree murder have been proved beyond a reasonable doubt.

Second degree murder was not included in the verdict sheet. The jury convicted Hook of murder in the first degree based on both premeditated murder and on felony murder. The utter silence with respect to murder in the second degree left the jury with a hobson's choice [18] to the embarrassment of Hook's defense and to his prejudice.

In *Keeble v. United States*, 412 U.S. 205, 213, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973), the Court observed:

> Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.

---

**18.** After Thomas Hobson, 1631 English liveryman, from his practice of requiring every customer to take the horse which stood nearest the door. Thus, the forced acceptance of something whether one likes it or not; the necessity of accepting something objectionable through the fact that one would otherwise get nothing at all; something that one must accept through want of any real alternative. Webster's Third New International Dictionary of the English Language Unabridged (1981) at 1076.

The Court used as an example the case before it:

> In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

*Id.* The Court in *Beck v. Alabama,* 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392 (1980) (footnote omitted), pointed out:

> At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged.[19]

"But," the Court declared, "it has long been recognized that it can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Id.* The Court quoted the explanation given by Brennan, J., in his opinion for the Court in *Keeble:*

> "Moreover, it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction."

*Beck* at 634, 100 S.Ct. at 2388, quoting *Keeble* 412 U.S. at 212–213, 93 S.Ct. at 1997–1998 [emphasis in original]. *Beck* noted that the

---

**19.** The Court of Special Appeals has taken the same position with respect to Maryland common law, but this Court has not passed on the question. *Shell v. State,* 307 Md. 46, 51 n. 2, 512 A.2d 358 (1986); *Hawkins v. State,* 291 Md. 688, 689, 692, 436 A.2d 900 (1981); *Grimes v. State,* 290 Md. 236, 240, 429 A.2d 228 (1981).

Court had "invalidated procedural rules that tended to diminish the reliability of the sentencing determination "to insure that a death penalty is indeed imposed on the basis of "reason rather than caprice or emotion." 447 U.S. at 638, 100 S.Ct. at 2390. The Court declared:

> The same reasoning must apply to rules that diminish the reliability of the guilt determination. Thus, if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a state] is constitutionally prohibited from withdrawing that option from the jury in a capital case.

*Id. Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), explicated the *Beck* holding as requiring that a lesser included offense instruction be given when the evidence warrants such an instruction, but *only* in such circumstances. "The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence." *Evans* at 611, 102 S.Ct. at 2053. *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), characterized *Beck* as recognizing "the risk of an unwarranted conviction that is created when the jury is deprived of the 'third option' of convicting the defendant of a lesser included offense." 468 U.S. at 454, 104 S.Ct. at 3159. *Beck* concluded, *Spaziano* iterated, that

> "[s]uch a risk cannot be tolerated in a case in which the defendant's life is at stake" and that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a State] is constitutionally prohibited from withdrawing that option from the jury in a capital case."

*Spaziano* at 454, 104 S.Ct. at 3159, quoting *Beck,* 447 U.S. at 637–638, 100 S.Ct. at 2389–2390.[20] *Beck* also recognized, according to *Spaziano,*

> that the jury's role in the criminal process is essentially unreviewable and not always rational. The absence of a lesser included offense instruction increases the risk that the jury will convict, not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free. In *Beck,* the Court found that risk unacceptable and inconsistent with the reliability this Court has demanded in capital proceedings. ... The goal of the *Beck* rule, in other words, is to eliminate the distortion of the factfinding process

---

**20.** The issue in *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), was whether the defendant is entitled to the benefit of both the lesser offense instruction and an expired period of limitations on those offenses. *Id.* at 454, 104 S.Ct. at 3158. The Court decided that if the defendant wanted the instruction, he would have to waive limitations on the lesser offenses. *Id.* at 456–457, 104 S.Ct. at 3160–3161.

that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence.

468 U.S. at 455, 104 S.Ct. at 3159 (citations omitted). We glean from *Spaziano* that a defendant has the option whether to have a lesser offense instruction given to the jury.

Although the *Beck* rule rests on the premise that a lesser included offense instruction in a capital case is of benefit to the defendant, there may well be cases in which the defendant will be confident enough that the State has not proved capital murder that he will want to take his chances with the jury.

468 U.S. at 456, 104 S.Ct. at 3160. The seed of the lesser offense rule was planted in *Keeble*, enunciated in *Beck*, explicated in *Evans*, and applied in *Spaziano*. The rule is: in a capital case, at the request of the defendant, the court shall instruct the jury regarding a lesser included offense when the evidence warrants such an instruction, that is, when the offense is fairly supported by the evidence.

Absent the removal of second degree murder from the consideration of the jury by the State's nol pros, the circumstances here clearly fall within the ambit of the rule. This was a capital case at the time it went to the jury at the guilt stage of the trial. Hook requested an instruction on second degree murder. The evidence warranted the instruction—second degree murder was fairly supported by the evidence. The jury, in the exercise of its function to judge the credibility of the witnesses and weigh the evidence, could have reasonably found that Hook was so intoxicated as to lack the capacity to entertain the specific intent necessary to commit premeditated murder. The first degree murder then would be lowered to second degree murder.

The trial judge's refusal to give the requested instruction on second degree murder and to permit defense counsel to argue that crime stemmed from the State's *nolle prosequi* which removed second degree murder from the consideration of the jury. The action of the State left no charge of second degree murder on which to convict, and thus placed the case outside the scope of the *Beck* rule. We do not believe that, under the circumstances, the State can circumvent the *Beck* rule in this manner. The *nolle prosequi* resurrected the very evils which *Beck* and its siblings buried. We think that the exceptional circumstances of this case present a rare occasion calling for a tempering of the broad authority vested in a State's Attorney to terminate a prosecution by a *nolle prosequi*. We believe that the State, in entering the *nolle prosequi* here, failed to observe that fundamental fairness

essential to the very concept of justice. Its action was inconsistent with the rudimentary demands of fair procedure. *See Crawford v. State,* 285 Md. 431, 453, 404 A.2d 244 (1979). Excluding second degree murder from the jury did not meet the "civilized standards for the fair and impartial trial" we called for in *Madison v. State,* 205 Md. 425, 434, 109 A.2d 96 (1954). We conclude, therefore, that the trial judge erred in overruling the objection to the entry of the nol pros. It follows that his refusal to instruct on second degree murder and to allow argument as to that crime was erroneous. *See* Md. Rule 4–325.

We are of the opinion that the lack of fundamental fairness, when related to the overall fairness of the entire trial, permeated the deliberations of the jury with respect to all of the charges. We are mindful of the context in which the jury deliberated. Hook confessed that he shot and killed two persons and stole their property. These admissions were buttressed by the testimony of two eyewitnesses. Hook made no attempt to refute or dispute that evidence (Hook offered no evidence at the trial). Proof of the corpus delicti and Hook's criminal agency stood bright and clear. So the jury was called upon to render judgment on an admitted murderer and thief with no alternative but to find him guilty or not guilty of murder in the first degree and guilty or not guilty of armed robbery. We are unable, upon our own independent review of the record, to declare a belief beyond a reasonable doubt that the errors in the entry of the nolle prosequi, the absence of instructions on second degree murder, and the refusal of the trial court to allow defense counsel to argue with respect to that offense in no way influenced the verdicts. We think that the errors tainted all of the verdicts. They not only affected the finding of guilt as to premeditated murder, but also the convictions on felony murder, the armed robberies, and the handgun offense. We are not satisfied that the test laid out in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976), has been met so as to render the errors harmless. We are convinced that there is a reasonable possibility that the errors may have contributed to the rendition of all of the guilty verdicts.[21] Hook is entitled to a new trial.

---

**21.** The State looks to *Blackwell v. State,* 278 Md. 466, 365 A.2d 545 (1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977), in declaiming that the errors here were harmless in any event. Blackwell was indicted, as was Hook, for murder in the first degree under the formula authorized by statute. The prosecution proceeded, however, as to first degree murder only on the basis that the murders were committed in the perpetration of arson, one of the first degree murder felonies designated by the legislature. Blackwell's request for an instruction on second degree murder was denied. We found no

## V

We have granted Hook a new trial pursuant to a rule evolved by the Supreme Court of the United States with respect to capital cases. As we have seen, the case sub judice was a capital case when it was given to the jury. When it was returned by the jury, however, it had lost its status as a capital case because the jury had rejected the death penalty sought by the State. On remand, this may well prompt several questions concerning the conduct of the new trial. We try to anticipate them and provided answers for the guidance of the trial judge and the parties.

### (1)

Inasmuch as the Supreme Court rule which we applied to overturn the judgments here dealt only with capital cases, we must look beyond the reach of the rule for the retrial. At the heart of the Supreme Court rule is that a defendant constitutionally must be afforded a trial which observes the fundamental fairness essential to the very concept of justice. In Maryland, however, we have long protected, as a matter of our common law, the right of an accused to a fair trial. As pointed out, *supra*, the right is paramount, *Crawford v. State*, 285 Md. at 451, 404 A.2d 244, and we have always endeavored to prevent even the probability of unfairness, *id.* at 452. See *State v. Ward*, 284 Md. at 209, 396 A.2d 1041. Therefore, we look beyond the Supreme Court rule spawned by *Keeble, Beck, Evans* and *Spaziano*, and its restriction to capital cases. We consider the matter in the light of our Maryland common law and apply the fairness concept as to lesser included offenses to encompass noncapital cases.

When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is

---

error because the evidence adduced established, without dispute, that the crime was committed in the course of an arson and that there was no question of the existence of deliberation and premeditation for the jury. *Id.* at 475–478, 365 A.2d 545. In the case at hand, the State asserts that since Hook could have been and, in fact, was convicted of murder in the course of an enumerated felony, any error with respect to his convictions of premeditated murder were harmless. As we have pointed out, this is a view we cannot accept in the particular circumstances of this case.

It may be that when the underlying felony is one not enumerated in the statutes, the murder is in the second degree. See *Campbell v. State*, 293 Md. 438, 441–442, 444 A.2d 1034 (1982); *Jackson v. State*, 286 Md. 430, 435–436, 408 A.2d 711 (1979); MPJI–Cr (1987) 4:17–7, Comment at 255.

fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense. The same rationale, set out in detail *supra*, that supports the Supreme Court rule supports this view. In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense. And if the trial is before a jury, the defendant is entitled, if he so desires, to have the jury instructed as to the lesser included offense.

We have determined *supra* that second degree murder was fairly supported by the evidence adduced at the trial here. If evidence to like effect is adduced at a retrial, Hook is entitled to have the trier of fact consider a verdict of second degree murder. Upon the establishment of such entitlement, the State, of course, would be precluded again from entering a *nolle prosequi* to second degree murder. And if a jury is the trier of fact, Hook would be entitled to have an instruction on second degree murder.

### (2)

It is settled that the protection against double jeopardy generally does not limited the power of a competent tribunal to retry a defendant who has succeeded in getting his first conviction set aside on grounds other than the sufficiency of the evidence.[22] *Sweetwine v. State*, 288 Md. 199, 204, 421 A.2d 60, *cert. denied*, 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980), citing *Parks v. State*, 287 Md. 11, 15, 410 A.2d 597 (1980). *Parks* looked to *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), and observed:

*Ball*, then, makes clear that a defendant who successfully challenges his conviction may be retried by a court of competent jurisdiction, the rationale being that the defendant wiped the slate clean and the parties may start anew. Not only is the right of the defendant to an error-free trial protected but the societal interest that the guilty should be punished is preserved.

---

**22.** We note that if a reversal of the judgment of a trial court is based upon the insufficiency of the evidence as a matter of law to sustain a conviction of an offense, the constitutional prohibition against double jeopardy bars a retrial on that offense. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Green v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Mackall v. State*, 283 Md. 100, 113–114, 387 A.2d 762 (1978).

*Parks*, 287 Md. at 16, 410 A.2d 597. *See North Carolina v. Pearce*, 395 U.S. 711, 719–721, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), and cases cited in *Sweetwine*, 288 Md. at 205, 421 A.2d 60. It follows that Hook may be retried on each of the offenses of which he was convicted. And under the endorsement of *Sweetwine* of the rationale that a defendant who successfully challenges his conviction wiped the slate clean so that the parties start anew, the second degree murder charge encompassed in the murder count is also before the trier of fact, untroubled by any double jeopardy prohibition.

## (3)

With further reference to the retrial of Hook, we call attention to Md. Code (1973, 1984 Repl. Vol., 1988 Cum. Supp.), § 12–702(b) of the Courts and Judicial Proceedings Article which provides:

If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:

(1) The reasons for the increased sentence affirmatively appear;

(2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and

(3) The factual data upon which the increased sentence is based appears as part of the record.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.