74

570 A.2d 1226

**Aubrey Ryon PADGETT, Jr.**

**v.**

**STATE of Maryland.**

**No. 101, Sept. Term, 1989.**

Court of Appeals of Maryland.

March 12, 1990.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Aubrey Ryon Padgett, Jr., a resident of Prince George's County, was arrested in Anne Arundel County and charged with driving while intoxicated, driving while under the influence of alcohol, and failing to drive within a single lane. Upon his demand for a jury trial, the case was transferred from the District Court of Maryland, sitting in Anne Arundel County, to the Circuit Court for Anne Arundel County. When the case came on for trial in the circuit court, however, Padgett forwent his right to be judged by his peers and opted for trial by the court. Although he pleaded not guilty, he agreed to submit the cause on a statement of facts. The judge accepted this arrangement. The prosecutor recounted the facts on the record and defense counsel stated that she had "no additions or corrections." Whereupon, the judge declared:

> All right, the Court finds that there's adequate evidence to the reasonable doubt test to make a finding of Guilty of all counts, enter that finding.

At the punishment stage of the trial, Padgett was afforded the opportunity of allocution. He was then 47 years of age. Defense counsel reviewed his background, his education, his business history, his active participation in church affairs, his work as a volunteer fireman for 31 years, his family life (five children, two of whom, 15 and 16 years old, were still living with him and were supported by him—their mother having died), his volunteer work in the community helping the elderly, and his driving record for the past 31 years (only one speeding ticket). She set out the circumstances leading to the current charges.

> On the evening in question, this event occurred on Halloween in 1987, so it's been over a year now since this occurred. But at that time he was experiencing some

pretty severe financial problems. His house was up for sale and the settlement fell through. He had—he has a business of his own which he's had for approximately fourteen years.

*　　*　　*　　*　　*　　*

He's had his own business for approximately fourteen years and on the day in question he had a business deal that didn't come through the way it was supposed to—it wasn't even a business deal, he was supposed to make three or four thousand dollars on a job that he did and he didn't do it so that he wasn't in the best frame of mind, we might say.

Defense counsel discussed Padgett's reaction to his arrest.

He's undergone a lot of emotional suffering because this has happened. As a volunteer fireman he's had plenty of occasions to scrape dead bodies up off the roads in Prince George's and Charles County so he knows what drunk drivers can do. The fact that he's now finding himself in the position of having been a drunk driver has been very difficult for him.

She observed: "[H]e's dealt with the situation up front all along." Padgett had indicated to defense counsel that he was not a regular drinker. "He's what you might refer to as an occasional drinker." She said that she represented Padgett in civil matters and has "seen him on many occasions.... I've certainly never seen anything in my dealings with him to indicate otherwise."

All of this painted a picture of Padgett as a desirable, respected, and contributing member of society. The prosecutor did not refute or dispute what defense counsel told the judge. On the contrary, the facts presented by the prosecutor had set out Padgett's cooperation at the time of the arrest:

He was ... transported to the barracks. He was advised of his rights [concerning the alcohol test]. He elected to take a chemical test which was performed in

accordance with all the proper procedures, the results being a .19.

He was polite and cooperative throughout the proceeding. He also volunteered before being advised of his *Miranda* rights that he had been drinking, he had had whiskey and Pepsi and had had three drinks.

Defense counsel requested probation before judgment. She suggested "that with Mr. Padgett's driving record and his history of never having any problem with alcohol or anything else ...," probation before judgment "would be appropriate." The judge invited the prosecutor to comment. The only thing he had to say was that he had "agreed not to oppose her request." The judge asked Padgett if he had anything to add. Padgett answered:

Only that I screwed up and I guarantee that it won't happen again.

The judge said:

All right, I take it that you have a long driving history and that this is something that should be considered, the fact that you have no priors, no prior offense other than the one speeding ticket, and we've all had that experience, I believe, or at least most of us.

I question why anybody would want to come here and not deal with a case like this somewhere else.[1] Under

---

**1.** Earlier in the proceedings, the judge had questioned why the case was in the circuit court. He asked defense counsel:

Ma'am, can you tell me why the case is here?

Defense counsel said that a jury trial had been demanded because I got into the case and was not able to get discovery and get myself prepared to even determine whether he had any defenses at all. It was strictly a matter of it was either do that or file a motion for a continuance.

The court did not appear to be satisfied with that explanation. He said:

Well you know, you said he was being up front. Did he want a jury trial or didn't he want a jury trial?

There ensued the following colloquy:

[DEFENSE COUNSEL]: At that point I recommended to him that he have a jury trial because I was not in a position to evaluate the

the circumstances if you agree I'll strike the finding of guilt, place you under—grant you Probation Before Judgment but I'm going to charge you a thousand dollar fine. Can you pay that today?

Padgett answered: "No, sir." The judge asked: "How soon can you pay it?" After Padgett and defense counsel conferred off the record, Padgett replied: "Your Honor, it would take me probably at least six months to come up with that."

Up to this point, the proceedings had progressed without untoward incident. What occurred next led to this appeal. The judge proclaimed:

Oh, no, I can't hear that. All right. Enter a finding of Guilty of "A" Count.[2] Sentence you to six months Detention Center, fine you a thousand dollars, suspend

---

case to determine whether or not he had any defenses whatsoever. He did not—

COURT: Well, do you ask for jury trials when you're not prepared to try a case?

[DEFENSE COUNSEL]: On that occasion I did, Your Honor. That is not my normal procedure but I did not have enough time to do anything else. And it appeared to me on the facts as recited to him that there may have been a defense. The case didn't walk into my office with me evaluating it as though there were absolutely no defense. While my client was very honest and straightforward with me, as Your Honor well knows from practicing law himself, sometimes clients come in and they say yeah I did it I'm guilty but there may be a defense that you're able to glean from the documents and so forth that you obtain from the State's Attorney.

The judge let the matter drop for the moment. But in the light of what he later said, it seems that he thought that defense counsel's explanation was casuistical.

2. "A" count charged the offense of driving while intoxicated.

As we have seen, *supra,* the judge previously directed the entry of a verdict of guilty on all counts. The docket entries reflect the verdict as being "Guilty to Warrant 1." Charging document # 292827, charged "driving while intoxicated," designated as "A". It is also so designated on the "Traffic System Citation Information" report, and the "Traffic System Event Information" report. The "Commitment Record" reflects "guilty" on the charge of driving while intoxicated, and "no verdict" on the other two charges.

the finding of—suspend the detention of six months, place you on five years probation.

The judge added:

All right. You have the right to appeal. Your appeal has to be filed within thirty days. Within ten days of filing the appeal you—you have to ask the steno for a written transcript or your appeal is defective.

Defense counsel said:

Your Honor, I would like to point out to the Court that—that Mr. Padgett is still experiencing extreme financial difficulties. He has not paid me—

The judge interrupted:

Maybe he is but I—you're here now, Ma'am, and that's the sentence.

You're excused.

Padgett noted an appeal. The Court of Special Appeals affirmed the judgment. *Padgett v. State*, No. 1841, September Term, 1988, filed 22 June 1989, unreported. We granted Padgett's petition for a writ of certiorari. He questions the propriety of the abrupt change of heart of the circuit court judge. He asks:

May probation before judgment be withheld in favor of the entry of a judgment solely because of the defendant's inability to pay a $1,000 fine immediately?

Maryland Code, Article 27, § 641(a)(1)(i)1 provides, in pertinent part:

Whenever a person accused of a crime ... is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt ... may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate.

"The terms and conditions may include ordering the person to pay a fine or pecuniary penalty to the State...." *Id.*

The judge was obviously satisfied that probation before judgment was appropriate in the circumstances and that the best interests of Padgett and the welfare of the people would be served thereby. Not only did he first so indicate from the bench, but the Order for Probation originally designated that probation was granted before judgment. The designation was later scratched out. The order as filed shows the judgment entered. A six-month sentence was imposed but was suspended with supervised probation for five years upon conditions. One of the conditions was that Padgett pay a fine of $1,000 (the maximum authorized) and court costs of $130 within six months in such installments as the Maryland Division of Parole and Probation may "determine and direct."

Padgett does not complain about the order to pay the fine and costs. And he accepts the six months permitted him to comply with the pecuniary payments in such installments as the Maryland Division of Parole and Probation may determine and direct. After all, the condition was in accord with what Padgett had told the judge he was able to do. And it evidences that the judge accepted that Padgett could not pay the fine immediately. Ironically, however, it was because Padgett told the judge that he could not come up with the fine immediately but could pay it in six months that the judge denied him probation before judgment and insisted on entering a judgment, subjecting Padgett to all the consequences resulting therefrom.

In the circumstances, Padgett is unhappy with the imposition of a sentence, thereby saddling him with a record. We have heretofore recognized that "fundamental fairness is essential to the very concept of justice." *Hook v. State,* 315 Md. 25, 41–42, 553 A.2d 233 (1989). *See Crawford v. State,* 285 Md. 431, 453, 404 A.2d 244 (1979). Under the peculiar circumstances of this case, we believe that what the judge did here and how he did it was fundamentally unfair. The lack of fundamental fairness resulted in an abuse of the discretion bestowed on the judge with respect to the imposition of punishment. Justice requires that the judgment he

entered be reversed and probation before judgment be awarded.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH DIRECTION TO ENTER JUDGMENT IN ACCORD WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.