709 A.2d 1255

**STATE of Maryland**

v.

**Melvin Robert BOWERS.**

**No. 50, Sept. Term, 1997.**

Court of Appeals of Maryland.

May 20, 1998.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Anthony Bornstein, Washington College of Law, Washington, DC, for respondent.

Argued before BELL, C.J., ELDRIDGE. RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

RAKER, Judge.

Melvin Roberts Bowers was indicted by the Grand Jury for Howard County on the charges of involuntary manslaughter in violation of Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.) Article 27, § 387,[1] reckless endangerment in violation of Article 27, § 12A–2 and inhaling a harmful substance in violation of Article 27, § 301, all arising from the death of Geneva Marie Hodge. A jury found him guilty of reckless endangerment and not guilty of inhaling a harmful substance. The jury was unable to reach a unanimous verdict on the manslaughter charge, and the court declared a mistrial on that count. The

---

1. Unless otherwise specified, all statutory references herein shall be to Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.) Article 27.

State exercised its right to retry Bowers on the manslaughter count.[2] At the second trial, the court denied Bowers's request to instruct the jury on the lesser included offense of reckless endangerment. The issue we must decide in this case is whether the prior conviction of the lesser included offense of reckless endangerment precluded an instruction for that offense at the second trial. We conclude that the trial court correctly refused to instruct the jury on reckless endangerment.

## I.

On September 6, 1993, members of the Howard County Fire and Rescue Department responded to a 911 call for a possible "D.O.A." at 2821 Southview Road in Ellicott City. Melvin Robert Bowers met them at the doorway of his home and showed them upstairs. There, Lieutenant Sharp found the body of Geneva Hodge lying lifeless on a blue tarp. Howard County Police Officer William Vogel arrived shortly thereafter. As he entered the bedroom, Officer Vogel observed the woman's body, noticing bruises on her neck and that the bed had been stripped. The clothes were exceptionally neat "as if she had been recently dressed." Officer Vogel placed Bowers under arrest.

Bowers told the police that he had picked up his girlfriend, Geneva Hodge, at 10:00 p.m. on September 5, 1993. They subsequently returned to his house and engaged in sadomasochistic sexual relations. In the early morning hours, Hodge informed Bowers that her teeth hurt. According to Bowers, Hodge asked him to get her the bottle of chloroform which he kept for lower back pain. She had tried it several months earlier, and she insisted on using it that night. Bowers maintained that they both held the chloroform-soaked cloth

---

2. The State's right to retry Bowers on the involuntary manslaughter count is not in dispute. *See* Md. Rule 4–327(d) ("When there are two or more counts, the jury may return a verdict with respect to a count as to which it has agreed, and any count as to which the jury cannot agree may be tried again.").

over her mouth while she inhaled. Bowers then fell asleep, only to awaken approximately a half hour later to find Hodge was cold to the touch. He listened for a heartbeat and tried C.P.R. Realizing it was hopeless, he called a pastor and then an attorney. Bowers also admitted to washing the sheets and the comforter and moving Hodge onto the tarp. Several hours later, he called the police.

The jury convicted Bowers of reckless endangerment, acquitted him of inhaling a dangerous substance, and was unable to reach a unanimous verdict on involuntary manslaughter. The State elected to retry Bowers on the involuntary manslaughter charge, and the trial court deferred sentencing pending the outcome of the second trial. At the second trial, defense counsel requested that the trial court submit the charge of reckless endangerment to the jury, arguing that reckless endangerment is a lesser included offense of involuntary manslaughter. Defense counsel argued:

> This could be a situation where a jury listens to this case and believes that Melvin Bowers is guilty of something. That Melvin Bowers did something wrong. That Melvin Bowers—that the conduct of Melvin Bowers was such that—it should run afoul of the criminal law. And if they believe that, then that jury will be inclined to convict him of an offense. Under the present circumstances, the only offense before them is manslaughter. And as a result, the jury would be more inclined to return a verdict of guilty of manslaughter than if there were a lesser included offense submitted to them as well.

Defense counsel asked the court to "make a verdict sheet that says, count one, manslaughter, count two, reckless endangerment. And I want the Court to take a verdict of not guilty or guilty as to each of those two counts."

The State opposed Bowers's request to submit reckless endangerment to the jury, arguing that defense counsel was "asking the Court to create a legal fiction that the Court just has no authority to do." In response to the Court's concern

about a subsequent finding of "not guilty" on the reckless endangerment charge, defense counsel responded:

> I don't know what would happen then. It could well be that the prior conviction would preclude enforcement of the ... subsequent not guilty verdict. I don't know what would happen then, but I do know that to fail to submit that count to this jury would be unfair. So, I suppose—that if the jury returned a not guilty verdict as to reckless endangerment here, it would be superseded by the first verdict. Although I don't have any case law that I've looked at yet for that proposition.

The court denied the request. Defense counsel then suggested:

> In that case, Your Honor, I would ask the Court's permission, *and then I would have to think about whether I want to actually do this or not,* to make this jury aware, either by introducing a docket sheet or introducing some item of evidence, that in my discretion, make the jury aware that Mr. Bowers has been convicted of reckless endangerment. So that, if that is their position, that they believe some crime has been committed, that they would know that he has been convicted of that crime, and then they could potentially consider the manslaughter count with that knowledge.

Although the court gave counsel additional time to consider whether he wished to proceed in that manner,[3] defense counsel never requested the court to advise the jury that Bowers had been convicted of reckless endangerment. Bowers was

---

3. The trial judge indicated:

   I would suggest that, I don't give advisory opinions, and I'm sure nobody else does either. If at sometime during your case you want to move into evidence the fact that there was a prior trial at which certain dispositions were made, or a certain disposition was made, I guess, the State will respond and I'll respond at that time, so. I *would tend to agree, it wouldn't be appropriate,* as you indicate, to do that in the midst of argument without something being in evidence about it.... But, so let's just respond and let counsel have the benefit to think over the next couple of hours as to how he wants to respond.

convicted of involuntary manslaughter, and, at sentencing, the court merged the reckless endangerment and involuntary manslaughter convictions.

Bowers appealed to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed the reckless endangerment conviction and vacated the manslaughter conviction. The court resolved the threshold question of whether reckless endangerment is a lesser included offense of involuntary manslaughter in Bowers's favor, concluding "[t]he parties do not dispute that reckless endangerment is a lesser included offense of involuntary manslaughter." The court reasoned that, based on *Hook v. State,* 315 Md. 25, 553 A.2d 233 (1989) and *Hagans v. State,* 316 Md. 429, 559 A.2d 792 (1989), under ordinary circumstances Bowers would be entitled to have the lesser included offense of reckless endangerment submitted to the jury. The only impediment in this case, the Court of Special Appeals noted, was that Bowers "earlier had been convicted of reckless endangerment and submission of that charge to the jury would have placed him in jeopardy a second time as to that charge." Finding that Bowers's request to have reckless endangerment submitted to the jury amounted to a waiver of his double jeopardy protections, the intermediate appellate court reasoned:

> Had such a waiver been permitted, the second verdict as to reckless endangerment, whether guilty or not guilty, would have been a nullity. While, as the prosecutor complained, the waiver would indeed have created a "legal fiction," such a "legal fiction" was necessary to protect appellant's rights under the *Hook/Hagans* rule.

> In sum, fundamental fairness required that the lesser included offense of reckless endangerment be submitted to the jury. Appellant's double jeopardy protections created an impediment to the submission of that offense. Appellant attempted to waive those protections, however, and thus removed the impediment. Under the circumstances, the trial court erred by refusing to permit the waiver and to submit reckless endangerment to the jury.

We granted the State's petition for certiorari to consider the question of whether the Court of Special Appeals erred in ruling that, in the interest of fairness, the trial court was required to submit the lesser included offense instruction on the charge of reckless endangerment in the retrial for involuntary manslaughter.

## II.

At common law a defendant could be convicted of a lesser offense included in the offense charged. *Hagans,* 316 Md. at 444–45, 559 A.2d at 799–800 (citing *Weighorst v. State,* 7 Md. 442, 452–53 (1855) and *State v. Flannigan,* 6 Md. 167, 171–72 (1854)); *see also Beck v. Alabama,* 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392 (1980) (citing: 2 M. HALE, PLEAS OF THE CROWN, 301–02 (1736); 2 W. HAWKINS, PLEAS OF THE CROWN 623 (6th ed. 1787); 1 J. CHITTY, CRIMINAL LAW 250 (5th Am. ed. 1847); T. STARKIE, TREATISE ON CRIMINAL PLEADING 351–52 (2d ed. 1822)); James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies,* 79 MARQ. L.REV. 1, 98 (1995); Janis L. Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense,* 50 BROOK. L.REV. 191, 195 (1984). One commentator summarized the origin of the doctrine as follows:

> The notion of the lesser included offense has its roots in common law. As early as 1554, an English jury in a murder case was permitted to return a guilty verdict in a form of homicide carrying a less severe sentence than the crime originally charged. By 1772, English juries could consider the possibility of conviction for an offense consisting of the same, but fewer, elements of the crime for which the defendant was brought to trial in noncapital cases as well. This concept made its way into the evolving body of American jurisprudence and, in 1872, became the rule governing all federal criminal trials when Congress enacted a statute, the significant language of which is now embodied in Federal Rule Criminal Procedure 31(c) (Rule 31(c) or Rule).[4] In

---

4. Federal Rule Criminal Procedure 31(c), adopted in 1944, embraces chapter 255, section 9 of the Act of June 1, 1872, 17 Stat. 198 (1872)

pertinent part, the Rule provides that a "defendant may be found guilty of an offense necessarily included in the offense charged."

Ettinger, *supra*, at 195 (footnotes omitted).

■ Today, "the [lesser included offense] doctrine has been universally accepted in the federal system and in all the states." Shellenberger and Strazzella, *supra*, at 110; *see Beck*, 447 U.S. at 633–34, 100 S.Ct. at 2387–88. Under Maryland common law, a defendant charged with a greater offense can be convicted of an uncharged lesser included offense as well as the charged offense. *Hagans*, 316 Md. at 444–45, 559 A.2d at 799–800. Although at one point in the development of the common law, this general rule did not apply when the greater offense was a felony and the lesser was a misdemeanor, "[w]ith the disappearance of the common law procedural distinctions between felonies and misdemeanors, courts no longer adhere to the original common law limitation upon the rule permitting convictions on lesser included offenses." *Id.* at 446–47, 559 A.2d at 800.

In federal trials, a defendant's right to a lesser included offense instruction was also grounded in the common law, and recognized by the Supreme Court as early as 1896 in *Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 843, 40 L.Ed. 980 (1896). "In the federal courts, it has long been 'beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'" *Beck*, 447 U.S. at 635, 100 S.Ct. at 2388 (quoting *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973)).

---

and was intended as a restatement of that law. *See Schmuck v. United States*, 489 U.S. 705, 719, 109 S.Ct. 1443, 1452, 103 L.Ed.2d 734 (1989); James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies*, 79 MARQ. L.REV. 1, 9 n.14 (1995). The Act incorporates the common law lesser included offense doctrine.

Applying the principles of *Hook* and *Hagans,* Bowers contends that in his second trial, the trial court deprived him of a fair trial by refusing to instruct the jury on the lesser included offense of reckless endangerment. Although *Hook* dealt with the authority of the State to enter a *nolle prosequi* to a lesser included charge, and *Hagans* dealt with whether a jury may convict a defendant of an uncharged lesser included offense, we agree with Bowers that a trial judge's obligation to instruct a jury on an uncharged lesser offense is evaluated in light of the principles established in those cases and their progeny. *See Ball v. State,* 347 Md. 156, 191–92, 699 A.2d 1170, 1186 (1997); *Burch v. State,* 346 Md. 253, 280, 696 A.2d 443, 456 (1997). We disagree, however, with Bowers's view of those cases.

## A.

In *Hook,* the defendant was charged with felony murder and first degree premeditated murder. Hook admitted the killings, but maintained that he lacked the requisite specific intent for premeditated murder because he was intoxicated at the time of the killings. Over the defendant's objection, the State entered a *nolle prosequi* to the second degree murder charge at the end of the State's case, thereby precluding the jury from considering the lesser included offense of second degree murder, leaving to the jury only the first degree murder counts of premeditated murder and felony murder, as well as armed robbery and the handgun counts. We held that the trial court erred in refusing to instruct the jury on the lesser included offense of second degree murder. *Hook,* 315 Md. at 44, 553 A.2d at 243. We reiterated the principles expressed in *Keeble,* 412 U.S. at 212–13, 93 S.Ct. at 1997–98, enunciated in *Beck,* 447 U.S. at 636–37, 100 S.Ct. at 2389–90, explicated in *Hopper v. Evans,* 456 U.S. 605, 610–12, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367 (1982), and applied in *Spaziano v. Florida,* 468 U.S. 447, 455, 104 S.Ct. 3154, 3159–60, 82 L.Ed.2d 340 (1984), all capital cases, that when a jury is presented with an "all-or-nothing" choice and "[w]here one of the elements of the offense charged remains in doubt, but the

defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of a conviction." *Hook*, 315 Md. at 39, 553 A.2d at 241 (internal quotation marks and citations omitted). Recognizing the long protected right in Maryland to a fair trial, based on Maryland common law, we concluded that the fairness concept addressed in the federal cases as to lesser included offenses in capital cases should encompass noncapital cases as well. *Hook*, 315 Md. at 43, 553 A.2d at 243. Judge Orth, writing for the Court, reasoned:

> When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense. The same rationale, set out in detail *supra*, that supports the Supreme Court rule supports this view. In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense.

*Id.* at 43–44, 553 A.2d at 243; *see also Jackson v. State*, 322 Md. 117, 120–21, 586 A.2d 6, 7–8 (1991); *Fairbanks v. State*, 318 Md. 22, 26–27, 566 A.2d 764, 766 (1989).

In *Hagans*, the issue before the Court was whether, as a matter of Maryland common law, a defendant ordinarily can be convicted of an offense which is not charged but which is a lesser included offense of one that is charged. Judge Eldridge, writing for the Court, traced the history of the lesser included offense doctrine, and concluded that the rule permitting a conviction on an uncharged lesser included offense was well-established at common law, that it is accepted throughout the United States today, and that it generally promotes a just result in criminal cases. *Hagans*, 316 Md. at 447–48, 559 A.2d at 801. In addition, we observed that there are recognized limitations to which we also adhere. *Id.* at 448, 559 A.2d at 801.

In *Hagans*, this Court also explained that the right to have a lesser included offense presented to the jury is not limited to one party, and applies to both the State and the defendant. *Id.* Although the rule was initially accepted at common law as an aid to the prosecution, the right today is generally equally available to the defendant because the underlying value served by this rule is reliability of the guilt determining process. *Id.*; *see also Beck*, 447 U.S. at 638, 100 S.Ct. at 2390; Shellenberger and Strazzella, *supra*, at 101; 8A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 31.03(1) (2d ed. 1992). From the defendant's perspective, the underlying purpose of the rule is to avoid the danger that a jury, persuaded that the defendant's conduct was illegal, but not convinced beyond a reasonable doubt that the State has proven all the elements of the greater offense, convicts simply because no other option exists, and the choice is either to acquit or to convict. *See Keeble*, 412 U.S. at 212–13, 93 S.Ct. at 1997–98. This Court noted the rationale underlying the lesser included offense rule as follows:

> The doctrine is a valuable tool for defendant, prosecutor and society. From a defendant's point of view, it provides the jury with an alternative to a guilty verdict on the greater offense. From the prosecutor's viewpoint, a defendant may not go free if the evidence fails to prove an element essential to a finding of guilt on the greater offense. Society may receive a benefit because, in the latter situation, courts may release fewer defendants acquitted of the greater offense. In addition, the punishment society inflicts on a criminal may conform more accurately to the crime actually committed if a verdict on a lesser included offense is permissible.

*Hagans*, 316 Md. at 448, 559 A.2d at 801 (quotation marks and citation omitted).

### B.

The inquiry in assessing whether a defendant is entitled to a lesser included offense jury instruction is a two-step process. The threshold determination is whether one

offense qualifies as a lesser included offense of a greater offense. Maryland applies an "elements test" to determine what is a lesser included offense, i.e., all of the elements of the lesser included offense must be included in the greater offense.[5] *Hagans*, 316 Md. at 450, 559 A.2d at 802. Once the threshold determination is made, the court must turn to the facts of the particular case. In assessing whether a defendant is entitled to have the jury instructed on a lesser included offense, the court must assess "whether there exists, in light of the evidence presented at trial, a rational basis upon which the jury could have concluded that the defendant was guilty of the lesser offense, but not guilty of the greater offense." *Ball*, 347 Md. at 191, 699 A.2d at 1186; *Burch*, 346 Md. at 279–80, 696 A.2d at 456; *Burrell v. State*, 340 Md. 426, 434, 667 A.2d 161, 164–65 (1995); *Jackson*, 322 Md. at 127–28, 586 A.2d at 10–11.

The *Hook* rule is grounded in fairness, and designed "to prevent jurors from convicting a defendant of the greater offense when they want to convict the defendant of some crime and they have no lesser option." *Burrell*, 340 Md. at 432, 667 A.2d at 164. In *Burrell*, we refined the *Hook* test, noting:

> The rule in *Jackson* is not a renunciation of the *Hook* test, but rather a logical extension of it. In much the same way as the rule in *Hook*, the modified test in *Jackson* works to prevent the jury from convicting the defendant of the wrong charge, but this time by *limiting* rather than expanding the discretion of the jurors. Just as jurors may not want to *acquit* a "plainly guilty" defendant altogether, they also may not want to *convict* a defendant, plainly guilty of the more serious charge, when he appears sympathetic for some reason. If nolle prossing the less serious charge is

---

5. As we pointed out in *Hagans v. State*, 316 Md. 429, 559 A.2d 792 (1989), this test is the same test articulated in *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871) and adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) to determine whether two offenses are to be deemed the same for purposes of double jeopardy. *Hagans*, 316 Md. at 449 n. 8, 559 A.2d at 801 n. 8.

precluded, the jury may select the option of convicting the defendant of a less serious crime than is warranted by the evidence. Attempting to prevent this type of "compromise" verdict is fair. Justice is no more done when a defendant is wrongly acquitted of a crime than it is when the defendant is wrongly convicted of that crime. As this court stated recently, "Justice is not a one-way street. 'A fair trial is the entitlement of the "People" as well as an accused.'" *Whitt-lesey v. State,* 326 Md. 502, 534, 606 A.2d 225, 240 (1992) (quoting *Gonzales v. State,* 322 Md. 62, 74, 585 A.2d 222, 228 (1991)).

*Id.* at 434, 667 A.2d at 165; *see also Hagans,* 316 Md. at 448, 559 A.2d at 801. The reason underlying the requirement that there must be a bona fide factual dispute regarding one element that is necessary to the greater crime but not essential to the proof of the lesser crime is that the jury should be given the option of convicting on the lesser crime only when "it constitutes a valid alternative to the charged offense," thereby "preserv[ing] the integrity of the jury's role as a fact-finding body." Ettinger, *supra,* at 210. By the same logic, the jury's verdict must be a plausible one. We observed that "[t]he jurors' presumed emotional response to want to convict a defendant who is 'plainly guilty' of something is tempered by having an array of *plausible* verdicts from which to choose, including the verdict which the evidence most clearly supports." *Burrell,* 340 Md. at 432, 667 A.2d at 164 (emphasis added).

▮▮▮ Reckless endangerment is a lesser included offense of the gross negligence variety of involuntary manslaughter. *See State v. Albrecht,* 336 Md. 475, 499, 649 A.2d 336, 347 (1994); *Cox v. State,* 311 Md. 326, 331–32, 534 A.2d 1333, 1335–36 (1988); *Williams v. State,* 100 Md.App. 468, 482–83, 641 A.2d 990, 997 (1994); Article 27, § 12A–2(a). As we have indicated, an instruction on a lesser included offense is appropriate and should be given when the lesser offense is necessarily included in the greater offense, when the evidence reasonably supports such an instruction, and when the jury may be given the option to convict from an array of plausible verdicts.

We reiterate that there must be a *plausible* basis for the verdict, such that the lesser included offense provides a valid alternative to the charged offense. If we look at the source of the right to an instruction on the lesser included offense, it becomes readily apparent that under the circumstances present herein, Bowers was not entitled to an instruction on reckless endangerment at the retrial of involuntary manslaughter. Although there was evidence at trial such that a reasonable jury could have convicted on the lesser charge, and not the greater, reckless endangerment was not a plausible verdict based on the circumstances of this case because Bowers had already been convicted of reckless endangerment. A defendant is not entitled to have the jury instructed on an offense for which he cannot be legally convicted. *See Spaziano*, 468 U.S. at 456, 104 S.Ct. at 3160; *State v. Timoteo*, 87 Hawai'i 108, 952 P.2d 865, 871 (1997); *Cowan v. Superior Court*, 14 Cal.4th 367, 58 Cal.Rptr.2d 458, 461, 926 P.2d 438, 441 (1996); *State v. Delisle*, 162 Vt. 293, 648 A.2d 632, 639 (1994); *People v. Carter*, 19 Cal.App.4th 1236, 23 Cal.Rptr.2d 888, 900 (1994). As a lesser included offense, and absent the prior conviction for reckless endangerment, Bowers would have been entitled to an instruction on that offense. As Bowers had been found guilty of reckless endangerment in his first trial, however, a verdict as to that charge would have been a legal nullity—a sham verdict.

While the lesser included offense doctrine has been recognized as a defense as well as a procedural safeguard, it is not to be used by the defendant as a sword. Procedural restraints operate to prevent abusive practices in the course of the defendant's exercise of this right. Ettinger, *supra*, at 216. An appeal to the jury to return a verdict which is in itself a legal nullity exceeds the scope of the right. A jury instruction on the offense of reckless endangerment would have misled the jury in its determination of the truth because Bowers had previously been convicted of the offense. Our cases never intended to permit juries to be misled. *See Delisle*, 648 A.2d at 639. It is one thing to withhold options from the jury; it is another to mislead jurors by instructing them that they may

find a defendant guilty of an offense for which there can be no judgment of conviction because there already exists that determination.

We do not find that the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction. The trial court gave Bowers the option of informing the jury that he had previously been convicted on the lesser included offense of reckless endangerment, thereby eliminating the risk that the jury might convict Bowers of manslaughter simply because the jury wished to avoid setting him free. Informing the jury that Bowers had been previously convicted of reckless endangerment would not have precluded Bowers from presenting a defense to the charge of involuntary manslaughter. Bowers's presence at the time and place of the death was not disputed, nor were his actions. What was primarily in dispute was whether there was a causal connection between his actions and the death that ensued. The crime of reckless endangerment "does not require that the defendant actually cause harm to another individual." *Albrecht*, 336 Md. at 500, 649 A.2d at 348. The State is, however, required to prove causation to convict on involuntary manslaughter. *Palmer v. State*, 223 Md. 341, 352, 164 A.2d 467, 473–74 (1960). Thus, informing the jury of Bowers's conviction of reckless endangerment would not have compromised his defense that he did not cause Hodge's death.

A request for a similar instruction was rejected in *People v. Carter*, 19 Cal.App.4th 1236, 23 Cal.Rptr.2d 888, 900 (1994). The defendant was convicted in the first trial of simple kidnapping and robbery, but the jury was unable to reach a unanimous verdict as to the more serious counts of murder and kidnapping for robbery. *Id.* at 893. The defendant was retried on the counts of murder and kidnapping for robbery. Defendant requested the court to instruct the jury on the lesser included counts of kidnapping and robbery in addition to instructions on the two offenses. The trial court refused. *Id.* at 900. On appeal, the court recognized that but for the

prior convictions, the defendant would have been entitled to the instructions. *Id.* Nevertheless, the appellate court affirmed, holding that:

> A defendant may not have the jury instructed on lesser-included offenses of which he cannot be legally convicted. Because defendant had already been found guilty of robbery and kidnapping, a second set of verdicts to that effect would have been purposeless; only one conviction of each offense could follow. Thus, as in the case of a conviction had on an offense as to which the statute of limitations had run, the jury's convictions would be a legal nullity.

*Id.*

The right to a lesser included offense instruction has arisen most often in the context of whether a defendant is entitled to an instruction on a particular offense when the statute of limitations has run on that offense. In *Spaziano,* 468 U.S. at 456, 104 S.Ct. at 3160, the Supreme Court held that, in a capital case, when a defendant refuses to waive the statute of limitations on the lesser included offenses, he is not entitled to an instruction on those offenses. *Id.* at 456–57, 104 S.Ct. at 3160–61. The Court reasoned that reliability of decisions involving death would be undermined if a jury were given a lesser included offense instruction on an offense for which the defendant could not be convicted. *Id.* The Court stated that a criminal defendant's right to a constitutionally fair trial "does not require that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice." *Id.*

The issue before the Court in *Spaziano,* a capital case where the statute of limitations had expired on the lesser included offenses, was whether the defendant was entitled to a jury instruction on the lesser included offenses. Spaziano challenged the trial court's refusal to instruct the jury on the lesser included offenses of capital murder. *Id.* at 449, 104 S.Ct. at 3156. The trial court agreed to instruct the jury on the lesser included non-capital offenses if Spaziano would waive the statute of limitations as to those offenses. *Id.*

Spaziano refused and the court instructed the jury solely on capital murder; the jury returned a guilty verdict. *Id.* at 450–51, 104 S.Ct. at 3157. In addressing petitioner's argument, the *Spaziano* Court acknowledged the significance of *Beck*,[6] which "made clear that in a capital trial, a lesser included offense instruction is a necessary element of a constitutionally fair trial." *Id.*, at 455, 104 S.Ct. at 3159. The *Spaziano* Court noted that the holding in *Beck* was based on the conclusion that depriving the jury of the "third option" of convicting a criminal defendant of a lesser included offense would pose a risk of an "unwarranted conviction." *Id.* at 454, 104 S.Ct. at 3159. The Court observed, however, that:

> [t]he element the Court in *Beck* found essential to a fair trial was not simply a lesser included offense instruction in the abstract, but the enhanced rationality and reliability the existence of the instruction introduced into the jury's deliberations. Where no lesser included offense exists [because the statute of limitations has already expired], a lesser included offense instruction detracts from, rather than enhances, the rationality of the process. *Beck* does not require that result.

*Id.* at 455, 104 S.Ct. at 3159. The Court found no error in the failure to instruct on the lesser included offenses. *Id.* at 457,

---

**6.** There is considerable debate as to the basis of the Supreme Court's holding in *Beck*, and whether *Beck* is grounded on Eighth Amendment concerns or the Due Process Clause of the Fourteenth Amendment, "although *Beck* is generally viewed as requiring greater safeguards only for capital cases." Shellenberger and Strazzella, *supra*, at 89; *see, e.g., Bagby v. Sowders*, 894 F.2d 792 (6th Cir.1990). The Supreme Court has "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process." *Beck v. Alabama*, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). In *Hopper*, the Court appears to have treated *Beck* as if it were based upon the Eighth Amendment, finding that, "[o]ur holding in *Beck*, like our other Eighth Amendment decisions in the past decade, was concerned with insuring that sentencing discretion in capital cases is channeled so that arbitrary and capricious results are avoided." *Hopper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982). We need not enter into this thicket, because this Court has extended the *Beck* rationale to noncapital cases as a matter of Maryland common law. *See Hook v. State*, 315 Md. 25, 43–44, 553 A.2d 233, 243 (1989).

104 S.Ct. at 3160. The *Spaziano* Court reasoned that if the defendant could not be convicted of a lesser included offense because the offense was time barred, the lesser included offense no longer existed, and any jury instruction on the lesser included offense "would simply introduce another type of distortion into the fact-finding process." *Id.* at 456, 104 S.Ct. at 3160. The *Spaziano* discussion on the integrity of the jury process is particularly apt to the case before this Court:

> *Beck* does not require that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice. Such a rule not only would undermine the public's confidence in the criminal justice system, but it would also do a serious disservice to the goal of rationality on which the *Beck* rule is based.

*Id.*

The right of a defendant to an instruction on a time barred offense has been addressed in the federal courts and several of our sister states. The Supreme Court of Vermont held that:

> [A]llowing a jury to find a defendant guilty of a crime for which the defendant cannot be punished, even if the jury has no say in what the punishment will be, makes a mockery of the trial. To do so is "to trick the jurors into thinking that they are discharging one of the most profound responsibilities of a free society when in fact they are not." ... In short, to instruct the jury on a time-barred offense precludes the jury from rendering a verdict with legal effect upon which a judgment can be entered, and, consequently, misleads the jury concerning its essential function, thereby undermining the very integrity of the criminal justice system.

*Delisle*, 648 A.2d at 639 (quoting *State v. Short*, 131 N.J. 47, 618 A.2d 316, 326 (1993) (O' Hern, J., dissenting)). The Vermont court concluded:

> In sum, we need not require judges to pull "the wool over jurors' eyes" by leading them to believe that "there is a choice of crimes for which to find the defendant guilty, when in reality" there is no choice.

*Id.,* 648 A.2d at 640 (quoting *Spaziano,* 468 U.S. at 456, 104 S.Ct. at 3160). The court left the defendant with the option of instructing the jury as to the lesser included offense, as long as the jury was made aware that the statute of limitations has run and a conviction would be precluded. *Id.,* 648 A.2d at 640–41. Other courts have required the defendant to waive the statute of limitations on the lesser included offense before a jury will be instructed on the time barred offense. *Rembert v. Dugger,* 842 F.2d 301, 303 (11th Cir.1988) (noting that a court is not required to instruct the jury on a lesser included offense in a capital case if the defendant does not waive the statute of limitations); *Cowan,* 58 Cal.Rptr.2d at 461, 926 P.2d at 441 ("[T]he court should elicit a waiver of the statute as a condition of the guilty plea or giving the [lesser included offense] instruction."); *Timoteo,* 952 P.2d at 871 (holding that Timoteo waived the statute of limitations for the time barred lesser included offense by requesting jury instruction on it).[7]

■■■ The waiver of the statute of limitations is not akin to the waiver of the protection from double jeopardy. The California court rejected the defendant's claim that his attempt to waive his right against double jeopardy permitted him to then assert his right to an instruction on the lesser included offense. *Carter,* 23 Cal.Rptr.2d at 900. We likewise find that any waiver or attempt to waive double jeopardy protection has "no effect on the pre-existing convictions; it remained the case that the defendant could not be twice convicted of the same offense based on the same conduct." *Id.*

Bowers is asking this Court to create a "legal fiction" and to institute the practice of presenting meaningless charges to a jury. Permitting a jury to return a verdict which is a nullity is contrary to the public interest and the sound administration

---

7. Although a few courts have held that the statute of limitations is jurisdictional and cannot be waived, the vast majority of federal and state courts have held that the statute of limitations is an affirmative defense which can be waived. *See Brooks v. State,* 85 Md.App. 355, 366, 584 A.2d 82, 87–88 (1991); *Cowan v. Superior Court,* 14 Cal.4th 367, 58 Cal.Rptr.2d 458, 472, 926 P.2d 438, 452 (1996).

of justice. We hold that the trial court correctly refused to instruct on the lesser included offense of reckless endangerment.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE CIRCUIT COURT FOR HOWARD COUNTY. COSTS TO BE PAID BY RESPONDENT.*