47 A.3d 582

**Russell T. BASS**

v.

**STATE of Maryland.**

**No. 2971, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

June 28, 2012.

Marc A. DeSimone, Jr. (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Brenda Gruss (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: JAMES R. EYLER *, WATTS, ARRIE W. DAVIS (Retired, Specially Assigned), JJ.

ARRIE W. DAVIS (Retired, Specially Assigned), J.

Appellant, Russell T. Bass, was tried and convicted by a jury in the Circuit Court for Montgomery County of burglary in the third degree. On January 11, 2011, he was sentenced to ten years incarceration and three years unsupervised probation. From the conviction and sentence, appellant noted this timely appeal, raising the following question [1] for our review:

---

* Eyler, James R., J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. The appellant frames the question as follows:

Did the circuit court err by refusing to allow appellant's request to submit the lesser included charge of fourth-degree burglary to the jury?

For the reasons that follow, we answer the question in the affirmative.

## FACTS AND LEGAL PROCEEDINGS

Appellant and Christopher Winston were long-time friends and co-members of a rap group. Over the years, appellant often visited Winston at his apartment at 366 North Summit Avenue, Gaithersburg, Maryland, where Winston lived with his mother, Tonia Winston, his sister, Felicia Winston and his girlfriend, Krystina Johnson. Christopher Winston's five-year-old daughter lived with her mother, Raquel Thompson, who was appellant's step-sister and the current girlfriend of one Anthony Felder.

Appellant arrived at the Winston apartment at approximately 1:00 p.m. on August 7, 2010, intending to ask Christopher Winston to burn a CD. When Winston, who was still asleep, refused to get up to do so, appellant phoned his step-sister, Raquel Thompson, to complain that Winston's girlfriend Johnson was preventing him from talking to Winston. It was well known that Thompson and Johnson had a rocky relationship and did not get along at all. The argument escalated into a physical confrontation between appellant and Winston for five to ten minutes, as Winston's mother, sister and girlfriend tried to separate them. As a result of the affray, Tonia Winston told appellant that he was no longer welcome in her home, and appellant left the apartment.

Once outside, appellant shouted that he had left his phone in the apartment. When the residents were unable to locate appellant's phone, he called 911 to report the missing phone;

Where Mr. Bass was charged with first degree burglary and third degree burglary, did the lower court err in instructing the jury as to those offenses, but refusing Mr. Bass' request to have the jury instructed as to the crime of fourth degree burglary?

**4**

he paced back and forth, holding something that looked like an ice pick; he shouted obscenities at Tonia Winston and Krystina Johnson; he shouted, "I'm going to get you" and "wait until my sister comes around here." When the residents of the Winston apartment found appellant's phone and tossed it over the balcony to him approximately ten minutes later, he left the premises.

Christopher Winston testified that, later that day, his friend, Kevin, suggested that he and appellant find a place where they could resume their affray; appellant suggested that they meet at a local restaurant called "Ma Dukes." Winston testified that they tried to close in on appellant when he arrived, someone threw a water bottle at appellant, and then they chased him around the parking lot, during which time appellant drove away recklessly, crashing into other cars. After the confrontation, Winston was not concerned because "obviously the beef was between him and my friend, Kevin." Johnson testified that, when she arrived at Ma Dukes, appellant's vehicle proceeded headlong directly at the car in which she was riding, as though he were going to crash into it. When the other men in the vehicle got out to chase appellant's car, he crashed into at least two other vehicles as he drove away. Anthony Felder was not involved in either the morning or the "Ma Dukes" episodes.

Later that evening, Thompson was supposed to come to the Winston apartment with her daughter to do Felicia's hair. Felicia Winston testified that, after she opened the door at approximately 11:00 p.m. to allow Thompson and her daughter to enter, "as soon as [she] closed the door, somebody's hand was inside the door" and "[a]s soon as the hand came in the door, it pushed the door open." Felicia Winston saw appellant, Thompson's boyfriend Felder and two other men.[2] Felicia Winston told the men, "You guys are not allowed to come in here, you're not welcome here." The men, however, pushed

---

2. Christopher Winston testified that, although Felder was dating the mother of Christopher's daughter, he and Felder had no relationship, and had never exchanged words.

past her into the living room of the apartment. After approximately five minutes, Felicia Winston was successful in persuading appellant and the other three men to leave the apartment.

After Felicia Winston closed and locked the door, Felder returned a few minutes later with two other men, but appellant was not with them. Felder banged on the door, angrily yelling, "I'm just here to check on my girlfriend" (referring to Thompson). Felicia Winston asked Thompson to speak with the men and opened the door to let her out. As soon as Felicia Winston closed the door, someone forced the door open and she saw Felder with a gun and two other men whom she could not identify. Felder put the gun to Felicia Winston's head and told her to get out of the way. Felder then proceeded toward the back of the apartment. Christopher Winston testified that he saw appellant standing in back of the hallway, toward the door.[3] A scuffle ensued among Felder, Christopher Winston, Felicia Winston and Krystina Johnson, as they attempted to get the gun away from Felder. One of the men who had come in with Felder also tried to take the gun from Felder, demanding, "Give me the gun, I'll do it." Johnson testified that this person was appellant's cousin, Rashad Bass. As Christopher Winston tried to push away the gun Felder was holding, Felder pulled the trigger and a bullet struck Christopher Winston above his heart.

Appellant was charged with the following: attempted murder, conspiracy to commit murder, two counts of first-degree assault, conspiracy to commit first-degree assault, first-degree burglary, conspiracy to commit first-degree burglary, third-degree burglary and use of a handgun in the commission of a

---

3. Tonia Winston testified that she did not see appellant at all on the night of the shooting. Felicia Winston testified that, after pushing appellant out of the apartment when he and Felder entered on Thompson's heels, she did not remember seeing him again. When the prosecutor tried to refresh her memory with a statement she made to police identifying appellant as a suspect, Felicia Winston said that she assumed that appellant had re-entered the apartment because he had been with Felder the first time that Felder had barged in. Johnson did not mention appellant when describing the altercation involving Felder.

felony. Appellant's trial took place November 30, December 1 and 2, 2010. After the trial judge granted his motion for judgment of acquittal on one of the assault charges, appellant requested that the jury also be instructed on fourth-degree burglary at the close of evidence. The State objected to this instruction, arguing that it did not believe "that a fourth degree burglary is a lesser of a first degree burglary. I would say a third degree burglary is the lesser. The fourth degree burglary doesn't require any element. It's really just a trespassing in a home or a store house." The State submitted that third-degree burglary was "the direct lesser of first degree," and elaborated that fourth-degree burglary was not because it "doesn't refer to intent at all. You can have no intent. Once you get there, you could just take a nap."

The State's theory of the case was that appellant was complicit in Felder's attack; the jury, however, acquitted appellant of all charges related to Felder's alleged commission of attempted first-degree murder, conspiracy to commit first-degree murder, assault in the first degree, assault in the second degree, conspiracy to commit assault in the first degree, first-degree burglary, conspiracy to commit first-degree burglary, and use of a handgun in the commission of a felony or a crime of violence. Appellant's counsel had asserted that the jury could "find ... that there was no intent to do anything" and "still come back on the fourth," so, therefore, he was "still entitled" to a jury instruction as to both third-degree and fourth-degree burglary.

Accepting the State's argument that "the lesser is the third, not the fourth," and that fourth-degree burglary was not a lesser included offense of first or third-degree burglary, the trial court refused to instruct the jury as to fourth-degree burglary, ruling:

> [T]he ... facts in the case, if the jury finds that a crime was committed, it would be clearly third degree, certainly not fourth degree. Because I don't think fourth degree is ... generated. I'm not going to give that.

Appellant objected at the time of the trial court's ruling and renewed his objection after the court instructed the jury. On December 2nd, 2010, the jury acquitted appellant of the remaining charges with the exception of third-degree burglary, which had been submitted to the jury as a lesser-included offense of first-degree burglary.

## LEGAL ANALYSIS

The very narrow issue with which we are presented on this appeal is whether the jury also should have been instructed on fourth-degree burglary. Appellant contends that the lower court erred in refusing to instruct the jury as to fourth-degree burglary and in refusing to submit that lesser offense to the jury. He asserts that a defendant is entitled to have lesser included offenses submitted to a jury when the evidence is legally sufficient for a defendant to be convicted of either a greater charged offense or a lesser included offense and that he may be convicted of a lesser included offense even if he is not charged with that offense. *Hook v. State*, 315 Md. 25, 43–44, 553 A.2d 233 (1989) (Defendant is entitled to have lesser included offense submitted to jury); *Hagans v. State*, 316 Md. 429, 448–49, 559 A.2d 792 (1989) (Defendant may be convicted of a non-charged lesser included offense if requested by party).

▮ Fourth-degree burglary,[4] which provides in pertinent part that "a person may not break and enter the dwelling of another," is a lesser included offense of both third-degree[5]

---

4. Md.Code Ann., Crim. Law § 6–205 (2002), provides in pertinent part:
 **Burglary in the fourth degree.**
 (a) *Prohibited—Breaking and entering dwelling.*—A person may not break and enter the dwelling of another.
 (c) *Prohibited–Being in or on dwelling* . . . .—A person, with the intent to commit theft, may not be in or on:
 (1) the dwelling . . . of another

5. Md.Code Ann., Crim. Law § 6–204 (2002), provides in pertinent part:
 **Burglary in the third degree.**
 (a) *Prohibited.*—A person may not break and enter the dwelling of another with the intent to commit a crime.

and first-degree burglary,[6] the *actus reus* of each crime being identical and the only distinction between the crimes being the progressively less culpable *mentes reae.* Thus, appellant argues that the trial court was required to instruct the jury on the uncharged lesser included offense at the defendant's request. *Johnson v. State,* 90 Md.App. 638, 646, 602 A.2d 255 (1992) (On the request of either party, the trial judge must properly instruct the jury on a lesser included offense fairly raised by the evidence and permit the jury to return a verdict on that offense). Appellant maintains it was incumbent, upon his request, for the trial court to instruct the jury as to all three crimes and, accordingly, asks that we vacate appellant's conviction and remand for a new trial at which a jury may be presented with the alternative of returning a verdict of guilty of fourth-degree burglary.

The State counters that the trial court properly declined to propound an instruction to the jury on the lesser-included charge of fourth-degree burglary because fourth-degree burglary requires a showing of an intent only to break and enter; and in light of the evidence presented by the State, if there were any instruction on a lesser-included offense, it should be on third-degree burglary, which requires a showing of an intent to commit a crime on the premises. In denying his request for an instruction on fourth-degree burglary on the ground that the instruction was not generated, the trial judge rejected appellant's argument that the jury might find that appellant broke in with no intent to commit a crime. The trial judge stated: "[I]f the jury finds that a crime was committed, it would clearly be third degree, certainly not fourth degree." The State posits that, in light of the evidence presented at trial, there was no rational basis upon which the jury could have concluded that appellant was guilty of merely breaking and entering *with no intent* to commit a crime, *i.e.,* fourth-

---

6. Md.Code Ann., Crim. Law § 6–202 (2002) provides in pertinent part:
 **Burglary in the first degree.**

 (a) *Prohibited.*—A person may not break and enter the dwelling of another with the intent to commit theft or a crime of violence.

degree burglary and *not breaking and entering* with intent to commit a crime, *i.e.*, third-degree burglary.

"Under Maryland common law, a defendant charged with a greater offense can be convicted of an uncharged lesser included offense as well as the charged offense." *State v. Bowers*, 349 Md. 710, 718, 709 A.2d 1255 (1998). A trial court's obligation to instruct the jury on an uncharged lesser offense is evaluated in light of *Hook v. State, supra*, and its progeny. *Bowers*, 349 Md. at 719, 709 A.2d 1255. The Court of Appeals summarized the applicable two-part test in *Bowers:*

> The inquiry in assessing whether a defendant is entitled to a lesser included offense jury instruction is a two-step process. The threshold determination is whether one offense qualifies as a lesser included offense of a greater offense. . . . Once the threshold determination is made, the court must turn to the facts of the particular case. In assessing whether a defendant is entitled to have the jury instructed on a lesser included offense, the court must assess whether there exists, in light of the evidence presented at trial, a rational basis upon which the jury could have concluded that the defendant was guilty of the lesser offense, but not guilty of the greater offense.

*Id.* at 721–22, 709 A.2d 1255 (citations, internal quotation marks and footnote omitted).

\* \* \*

> The reason underlying the requirement that there must be a bona fide factual dispute regarding one element that is necessary to the greater crime but not essential to the proof of the lesser crime is that the jury should be given the option of convicting on the lesser crime only when "it constitutes a valid alternative to the charged offense," thereby "preserv[ing] the integrity of the jury's role as a fact-finding body." By the same logic, the jury's verdict must be a plausible one.

*Id.* at 723, 709 A.2d 1255 (citations omitted, brackets in original).

The Court of Appeals, in *Burrell v. State,* 340 Md. 426, 667 A.2d 161 (1995), further explicated the rationale for giving the jury the option of returning a guilty verdict on the lesser included offense:

In other words, when faced with an "all-or-nothing" choice, a jury would likely convict a clearly culpable defendant of a more serious crime than the evidence truly supports rather than acquit the defendant and allow him to go unpunished for the crimes he *did* commit. Therefore, we ruled that if upon retrial the evidence of Hook's intoxication was again found sufficient to support a charge of second degree murder, the State would be precluded from nolle prossing the lesser included charge. The jury would then have another verdict option besides the "all-or-nothing" of complete acquittal or conviction of first degree murder.

*Id.* at 431–32, 667 A.2d 161 (emphasis in original, footnote omitted).

The *Burrell* Court then penned how it generalized its holding in *Hook* to craft a test for other situations in which the court will preclude the entry of a *nolle prosequi* to a lesser included offense because a *nolle pros* would deny the defendant a fair trial:

"When the defendant is plainly guilty of some offense and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense.... In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense."

*Id.* at 432, 667 A.2d 161 (quoting *Hook,* 315 Md. at 43–44, 553 A.2d 233). Finally, the *Burrell* Court concluded:

In considering whether an entry of nolle prosequi to a lesser included offense is unfair to the defendant, it is not enough to determine that the evidence would be sufficient for the

jury to convict on that offense; rather, the evidence must also be such that the jury could rationally convict *only* on the lesser included offense. If there is no rational basis for the jury to convict a defendant of the lesser offense without also convicting of the greater offense, the State may use its discretion to withdraw that verdict option from the jury by nolle prossing the lesser included offense.

*Id.* at 434, 667 A.2d 161 (emphasis in original).

The State concedes on appeal "that fourth-degree burglary is a lesser-included offense of first-degree and third-degree burglary," and that "a jury could have found that [appellant] did nothing but enter the Winston apartment without Felicia or Tonia Winston's consent, and the State did not prove any intent other than the intent to enter the premises. . . ." This position is contrary to the State's argument presented before the trial court that only third-degree burglary could be offered to the jury as a lesser-included offense of first-degree burglary, upon which the court relied when denying appellant's request for an additional jury instruction on fourth-degree burglary.

 It is well settled that "an exercise of discretion based upon an error of law is an abuse of discretion," *Brockington v. Grimstead,* 176 Md.App. 327, 359, 933 A.2d 426 (2007), and when an otherwise discretionary decision is premised upon legal error, that decision is necessarily an abuse of discretion because "the court's discretion is always tempered by the requirement that the court correctly apply the law applicable to the case." *Arrington v. State,* 411 Md. 524, 552, 983 A.2d 1071 (2009); *see also Alston v. Alston,* 331 Md. 496, 504, 629 A.2d 70 (1993) (noting "even with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards").

 Employing the two-step process set forth in *Bowers, supra,* 349 Md. at 721, 709 A.2d 1255, to the evidence in the case before us, we conclude that appellant is entitled to a lesser included offense jury instruction. First, under the "elements test" used in Maryland, by which "all of the ele-

ments of the lesser included offense must be included in the greater offense," *id.* at 722, 709 A.2d 1255 (quoting *Hagans,* 316 Md. at 450, 559 A.2d 792), it is undisputed that fourth-degree burglary is a lesser included offense of both first and third-degree burglary. Next, considering the facts of this particular case, we determine "whether there exists, in light of the evidence presented at trial, a rational basis upon which the jury could have concluded that the defendant was guilty of the lesser offense, but not guilty of the greater offense." *Id.* at 722, 709 A.2d 1255 (quoting *Ball v. State,* 347 Md. 156, 191, 699 A.2d 1170 (1997)). The record, as well as the State's own brief, demonstrate that the jury could have returned a verdict on fourth-degree burglary.

The testimony of Felicia Winston illustrates that, although appellant entered the Winston apartment without consent on the night of August 7, 2010, he departed upon her insistence after being in the home for only five minutes. Earlier in the day, there were some threats, fighting, and other evidence of possible criminal intent, but, during that time, other than the act of unlawfully entering the premises, there was no evidence of any criminal intent by appellant. The evidence shows that appellant "kind of put his hand in" the door of the residence and "came through the door," which shows a simple breaking and entry into the apartment without consent. Based upon this evidence, a jury could find that appellant unlawfully entered the premises without the intent to commit any additional criminal acts, which constitutes fourth-degree burglary.

The State based appellant's involvement in the shooting of Christopher Winston upon the earlier events of the day when Felder appeared a few minutes after he initially entered the home and shot him. However, the jury acquitted appellant of any involvement in the acts committed by Felder. Because of the foregoing, a jury could reasonably find that the State failed to prove that appellant had any specific intent, let alone the intent to commit a criminal act. There appears to be no dispute that appellant's entry into the Winston apartment was without the consent of the residents as appellant acknowledges that entrance was gained by pushing the door open. Felicia

Winston attempted to close the door to the apartment, immediately after admitting a visitor. Thus, whether appellant possessed any criminal intent as he entered the Winston residence was a question properly answered by the jury, and its answer determines whether he would be guilty of fourth-degree or the more serious third-degree burglary. By rejecting his request to offer the lesser included offense, the jury was faced with a Hobson's choice of convicting appellant of the greater offense in order to find him guilty of some crime, without the option of convicting him of the lesser offense of fourth-degree burglary. *See Hook,* 315 Md. at 38, 553 A.2d 233; *Fairbanks v. State,* 318 Md. 22, 25, 566 A.2d 764 (1989). It violated fundamental fairness to refuse to instruct the jury as to a factually supported lesser included offense when appellant could rationally be found guilty of the lesser included offense. *Johnson,* 90 Md.App. at 645, 602 A.2d 255.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED AND CASE REMANDED FOR NEW TRIAL AS TO THIRD AND FOURTH–DEGREE BURGLARY.**

**COSTS TO BE PAID BY MONTGOMERY COUNTY.**